[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13726
_____

D.C. Docket No. 1:16-cr-00224-WS-MU-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTONEZ TERRIL JOHNSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(October 4, 2018)

Before WILLIAM PRYOR, MARTIN, Circuit Judges, and VRATIL,* District
Judge.

VRATIL, District Judge:

_____
*Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by
designation.

Defendant appeals his conviction for possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1).  Defendant was a pedestrian walking near the middle of a road when a police officer stopped and questioned him.  During the stop, the officer searched defendant's backpack and found a firearm.  Defendant filed a motion to suppress the firearm on the ground that before searching the backpack, the officer unlawfully extended the scope of the pedestrian stop under Terry v. Ohio, 392 U.S. 1 (1968).  The District Court overruled defendant's motion to suppress, and he appeals.   For reasons stated below, we affirm.

## I.  BACKGROUND

Johnny Duval, a police officer in Mobile, Alabama, testified at the hearing on defendant's motion to suppress.  Officer Duval was the only witness, and he testified substantially as follows:

At approximately 1:00 a.m. on November 2, 2015, Officer Duval responded to a call from a nursing home about a suspicious person looking through windows in parked cars.  Defendant-Appellant Antonez Terril Johnson's Appellate Appendix filed November 14, 2017, Tab 40, Transcript Of Evidentiary Hearing at 5-6, 13.  The caller described the suspicious person as a black male.  Id. at 13.  While en route to the nursing home, Officer Duval saw defendant (a black male)

2

and a female companion walking on Springdale Boulevard.[1] Id. at 6-7. Officer Duval then watched as a car had to swerve to avoid one of the two individuals in the street. Id. at 7, 26.

Officer Duval activated his emergency lights and stopped his car in the center turn lane, near defendant and his companion. Id. at 7-8. Officer Duval testified that he stopped them because they posed a "safety risk." Id. at 14. For safety reasons, Officer Duval had defendant and his companion step to the back of the police car. Id. at 8. They did so. Officer Duval asked them where they had been. The individuals stated that they were walking from a nearby Walmart, which was open 24 hours per day, to their motel room. Id. at 17. Although they did not have Walmart bags, Officer Duval acknowledged that their purchases could have been in their pockets or in the backpack which defendant was wearing.

In response to questioning, defendant and his companion gave Officer Duval their names and dates of birth. Id. at 21-22. Officer Duval handcuffed them until he could verify their identities and a backup officer arrived. Id. at 8, 21-22. When asked why he handcuffed them, Officer Duval testified, "I put them in handcuffs for my safety and their safety. It's, you know, two against one. The numbers are

---

[1] One was walking in the center turn lane while the other was walking in a lane of traffic. Springdale Boulevard is a four-lane road with a turn lane in the middle. Defendant and his companion were walking on a portion of the road which is near a service road off Interstate 65, near several stores, restaurants and hotels. Springdale Boulevard has no sidewalks.

against me." Id. at 8.

After Officer Duval handcuffed them, he asked defendant, "Do you have a problem with me searching you [before you go] in the back of my police car?" Id. at 23. Defendant responded, "[N]o, I do not." Id. Officer Duval then searched defendant. Id. Officer Duval testified that he did so to ensure that defendant did not put anything in the back of his patrol car. Id. As Officer Duval searched defendant, he asked him, "[I]s there anything in this bag that I need to be concerned about, anything illegal?" Id. Defendant replied, "[N]o. My homeboy told me to get it, and you can search it." Id. at 24.

After a second officer arrived, defendant and his companion remained handcuffed. Id. at 21-22. The officers locked them inside the back of separate patrol cars, and they were not free to leave. Id. Officer Duval searched defendant's backpack and found a .357 revolver and two unfired shell casings. Id. at 9, 24. The warrant check revealed that defendant had no warrants. Id. at 22-23, 25. A check of the serial number revealed, however, that the gun was stolen. Officer Duval contacted his supervisor, who told him to take defendant to jail. Id. at 25.

The District Court found that Officer Duval's unrefuted testimony was credible and accepted it as true. Id. at 35. The District Court ruled that based on Officer Duval's observations, he had probable cause to believe that defendant had

4

violated Alabama's disorderly conduct statute, Ala. Code § 13A-11-7(a)(5) (1975), and that because he had probable cause to arrest, he had not only the right but the obligation to handcuff defendant for safety. Id. at 35-36. Finally, the District Court concluded that defendant had voluntarily consented to the search of his backpack. Id.

## II. STANDARD OF REVIEW

Rulings on motions to suppress involve mixed questions of fact and law. United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000). We review the district court's factual findings for clear error and its application of the law to the facts *de novo*. Id. All facts are construed in the light most favorable to the government, as the prevailing party below. Id.

## III. DISCUSSION

The parties present two issues on appeal. First, the parties dispute whether the search of defendant's backpack can be upheld as a search incident to arrest. Second, the parties dispute whether the search can be upheld on the alternative ground that after Officer Duval handcuffed defendant as part of a Terry stop, defendant consented to the search of his backpack. For reasons stated below, we need not directly address these two issues. Instead, we find that the search of defendant's backpack must be upheld because (1) when Officer Duval initially stopped defendant, he had probable cause to believe that defendant had violated

5

Alabama's disorderly conduct statute and (2) after Officer Duval arrested defendant by handcuffing him, defendant consented to the search of his backpack.

A.    Probable Cause To Arrest

The District Court found that based on Officer Duval's observations, he had probable cause to arrest defendant for disorderly conduct. Under Alabama law, "[a] person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he or she . . . [o]bstructs vehicular or pedestrian traffic, or a transportation facility." Ala. Code § 13A-11-7(a)(5). Defendant argues that absent further information, Officer Duval could not determine that defendant or his companion had the intent to cause public inconvenience, annoyance or alarm.

This argument is easily rejected. Intent to cause public inconvenience, annoyance or alarm is not a necessary element of Alabama's disorderly conduct statute: reckless creation of such a risk is sufficient to sustain a conviction. Officer Duval described Springdale Boulevard as a five-lane road with a number of businesses including a 24-hour Walmart, hotels and restaurants; he noted that a car had to swerve to avoid defendant and his companion; and he saw defendant and his companion walking in both the turn lane and one lane of traffic. Viewing these facts in a light most favorable to the government, the District Court did not err in finding that Officer Duval had probable cause to believe that (at a minimum),

6

defendant and his companion had violated the disorderly conduct statute by recklessly creating a risk of public inconvenience, annoyance or alarm.

B.    Search Of Defendant's Backpack

The Fourth Amendment of the United States Constitution protects persons and their houses, papers and effects against unreasonable searches and seizures. See U.S. Const. amend. IV.  We have defined three categories of police/citizen encounters: (1) voluntary exchanges which involve no coercion or detention; (2) investigatory detentions or Terry stops; and (3) full-scale arrests.  United States v. Perez, 443 F.3d 772, 777 (11th Cir. 2006); see Terry v. Ohio, 392 U.S. 1 (1968).

The initial encounter between Officer Duval and defendant falls into the second category – an investigatory detention or Terry stop.  Defendant does not challenge this initial encounter.  Instead, he argues that Officer Duval exceeded the limited scope of a Terry stop when he handcuffed him and searched his backpack.

A stop constitutes a seizure for purposes of the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief." Brendlin v. California, 551 U.S 249, 255 (2007) (quoting Delaware v. Prouse, 440 U.S. 648, 653 (1979)).  Under Terry, in addition to being justified at its inception, defendant's continued detention must be "reasonably related in scope to the circumstances which justified the interference in the first place."  Terry, 392 U.S. at 20; see United States v. Hardy, 855 F.2d 753, 759 (11th Cir. 1988) (Terry stop

7

not basis for full search that normally requires "probable cause, consent, or a valid arrest"). A detention that is so intrusive as to exceed the outer boundaries of an investigatory <u>Terry</u> stop may become a *de facto* arrest which must be supported by probable cause. <u>United States v. Dunn</u>, 345 F.3d 1285, 1289-90 (11th Cir. 2003); <u>see</u> <u>Hayes v. Florida</u>, 470 U.S. 811, 815-16 (1985) (at some point in investigative process, police procedures can be so intrusive as to trigger full protection of Fourth and Fourteenth Amendments); <u>United States v. Diaz-Lizaraza</u>, 981 F.2d 1216, 1221 (11th Cir. 1993) (character of seizure as arrest or <u>Terry</u> stop depends on nature and degree of intrusion, not on whether officer pronounces detainee "under arrest") (citation omitted). If police have probable cause to arrest a suspect, however, <u>Terry</u> and the ordinary limits of investigatory detentions do not apply. <u>See</u> <u>Dunn</u>, 345 F.3d at 1290 (if detention ripens into *de facto* arrest, <u>Terry</u>'s reasonable suspicion standard supplanted by probable cause requirement that attends making of arrest).

Here, we need not address the precise limits of when the investigatory stop of defendant became an arrest. <u>See</u> <u>id.</u> (unnecessary to engage in analysis whether detention permissible under <u>Terry</u> because even assuming police effected *de facto* arrest, officers had probable cause to arrest). For purposes of this appeal, we assume that putting defendant in handcuffs transformed the stop into an arrest which had to be supported by probable cause. As explained above, however, the

8

District Court did not err in finding that before Officer Duval handcuffed defendant, he had probable cause to believe that defendant had violated Alabama's disorderly conduct statute.[2]  Therefore Officer Duval had authority to arrest and handcuff defendant.

Defendant argues that his unlawful detention tainted his consent to the search of his backpack, but he has not established that any unlawful detention preceded his consent.  Furthermore, he presented no evidence or argument which suggested that his consent was coerced or involuntary.  For these reasons, we affirm the District Court ruling that overruled defendant's motion to suppress.

Defendant's conviction is **AFFIRMED**.

---

[2]      An officer's state of mind as to the reason for an arrest is not ordinarily relevant to the probable cause inquiry.  See Devenpeck v. Alford, 543 U.S. 146, 153 (2004) (subjective reason for making arrest need not be criminal offense as to which known facts provide probable cause); Scott v. United States, 436 U.S. 128, 138 (1978) (fact that officer does not have state of mind hypothecated by reasons which provide legal justification for his action does not invalidate action taken if circumstances, viewed objectively, justify that action).